# 22-2950

## United States Court of Appeals
## for the Second Circuit

LORENA M. MILLIGAN, individually and on behalf of all others similarly situated,

*Plaintiff-Appellee,*

*v.*

GEICO GENERAL INSURANCE COMPANY,

*Defendant-Appellant,*

CCC INTELLIGENT SOLUTIONS, INC.,

*Defendant.*

*On Appeal from the United States District Court, Eastern District of New York, Civil Action No. 2:16-cv-00240-DLI-RML*

## DEFENDANT-APPELLANT'S OPENING BRIEF

DAN W. GOLDFINE
JAMIE L. HALAVAIS
**DICKINSON WRIGHT PLLC**
1850 North Central Ave., Suite 1400
Phoenix, AZ 85004
Tel: (602) 285-5000
DGoldfine@dickinson-wright.com
JHalavais@dickinson-wright.com

BARRY I. LEVY
MICHAEL P. VERSICHELLI
CHERYL F. KORMAN
**RIVKIN RADLER LLP**
926 RXR Plaza
Uniondale, New York 11556-0926
Tel: (516) 357-3000
Barry.levy@rivkin.con
Michael.versichelli@rivkin.com
Cheryl.korman@rivkin.com

*Counsel for Defendant-Appellant GEICO General Insurance Company*

# I.   <u>CORPORATE DISCLOSURE STATEMENT</u>

GEICO General Insurance Company hereby certifies as follows: GEICO General Insurance Company (non-governmental corporate party) is an indirectly wholly owned subsidiary of GEICO Corporation, which is an indirectly wholly owned subsidiary of Berkshire Hathaway, Inc.

## II.   <u>TABLE OF CONTENTS</u>

I.   CORPORATE DISCLOSURE STATEMENT ......................................................i

II.   TABLE OF CONTENTS ................................................................................ ii

III.   TABLE OF AUTHORITIES ...........................................................................iv

IV.   JURISDICTIONAL STATEMENT .................................................................1

V.   STATEMENT OF ISSUES .............................................................................2

VI.   INTRODUCTION ...........................................................................................3

VII.   STATEMENT OF THE CASE ........................................................................6

    **A.**    Plaintiff's Policy..................................................................................7

    **B.**    Plaintiff Initiates The Underlying Class Action...................................8

    **C.**    GEICO Demands The Extrajudicial Binding Appraisal Process Set Forth In Plaintiff's Policy.....................................................................9

    **D.**    This Court Concludes The Appraisal Provision Is Binding Arbitration, But Concludes The Appraisal Provision Cannot Be Enforced Because There Is A Threshold Legal Issue That Must Be Resolved ...............10

    **E.**    *Milligan II* Resolves The Threshold Legal Issue That Rendered Appraisal Premature In *Milligan I* ......................................................12

    **F.**    Now That Appraisal Is Ripe, GEICO Again Demands Compliance With The Appraisal Provision............................................................13

    **G.**    The District Court Erroneously Deprives GEICO Of Its Contractual Right To The Extrajudicial Appraisal Remedy....................................15

VIII.   SUMMARY OF THE ARGUMENT ............................................................18

IX.   STANDARD OF REVIEW ...........................................................................20

X.   ARGUMENT .................................................................................................20

**A.**      Following *Milligan II*, Appraisal Is Now Ripe And The District Court Was Required To Enforce The Appraisal Provision ........................... 20

**B.**      The District Court Erred By Depriving GEICO Of Its Contractual Right To The Extrajudicial Binding Appraisal Process Set Forth In The Policy ........................................................................................................... 25

         **i.**      The District Court Erroneously Converted The Parties' Extrajudicial Remedy Into A Judicial Remedy ........................ 26

         **ii.**     The District Court's Ruling Also Contravened Strong Public Policies Favoring Appraisal And Arbitration ........................... 30

         **iii.**    The District Court's Error Spills Over To The Putative Class Action And Its Harm Is Compounded ...................................... 32

**C.**      To The Extent The District Court's Prior Untimeliness Finding Has Not Already Been Rejected Or Overruled, The District Court Erred In Concluding GEICO's Demand To Invoke The Appraisal Provision Was Untimely ................................................................................................. 32

         **i.**      The District Court's Untimeliness Determination Has Already Been Rejected ........................................................................... 33

         **ii.**     To The Extent The Untimeliness Determination Has Not Already Been Rejected, It Should Be Reversed As Part Of This Appeal ................................................................................................. 38

XI.    CONCLUSION ................................................................................. 48

XII.   CERTIFICATE OF COMPLIANCE ............................................. 50

XIII. CERTIFICATE OF SERVICE ....................................................... 51

# III.   TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Amerex Grp., Inc. v. Lexington Ins. Co.*,
678 F.3d 193 (2d Cir. 2012)........................................................... passim

*American Hotel Intern Group Inc. v. OneBeacon Ins. Co.*,
611 F. Supp. 2d 373 (S.D.N.Y. 2009) ....................................................38

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)............................................................... 25, 31, 32

*Calusa Bay N. Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*,
No. 2:21-CV-540-JLB-NPM, 2022 WL 6162704 (M.D. Fla. Sept. 30, 2022) ...26

*Daly v. Citigroup Inc.*,
939 F.3d 415 (2d Cir. 2019)............................................... 20, 25, 31, 32

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985).......................................................... 19, 25

*Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*,
279 F. Supp. 2d 235 (S.D.N.Y. 2003) ........................................ 5, 23, 24

*Duane Reed, Inc. v. St. Paul Fire & Marine Ins. Co.*,
261 F. Supp. 2d 293 (S.D.N.Y. 2003) ................................................23

*Farmers Auto. Ins. Ass'n v. Union Pac. Ry. Co.*,
768 N.W.2d 596 (Wis. 2009)............................................. 5, 26, 29, 31

*Fort Miller Co. v. Am. Transp., Inc.*,
No. 1:12-CV-681 FJS/RFT, 2013 WL 773108 (N.D.N.Y. Feb. 28, 2013) .........25

*In re PCH Assocs.*,
949 F.2d 585 (2d Cir. 1991)............................................... 38, 40

*Langley v. GEICO Gen. Ins. Co.*,
No. 1:14-CV-3069-SMJ, 2014 WL 11395159 (E.D. Wash. Dec. 8, 2014).. 28, 29

*Lee v. BSB Greenwich Mortg. Ltd. P'ship*,
267 F.3d 172 (2d Cir. 2001)....................................................20

iv

*Martinique Properties, LLC v. Certain Underwriters at Lloyd's London*,
   567 F. Supp. 3d 1099 (D. Neb. 2021).................................................28

*Mauna Kea Resort v. Affiliated FM Ins. Co.*,
   No. CV09094LDWWDW, 2009 WL 578529 (E.D.N.Y. Mar. 4, 2009)............29

*Meier v. Travelers Home & Marine Ins. Co.*,
   No. C15-022RSL, 2015 WL 11571005 (W.D. Wash. Nov. 23, 2015) ..............27

*Milligan v. CCC Info. Servs. Inc.*,
   920 F.3d 146 (2d Cir. 2019)....................................................... passim

*Milligan v. GEICO Gen. Ins. Co.*,
   No. 16-CV-240 (DLI) (RML), 2020 WL 5878406 (E.D.N.Y. Sept. 30, 2020) ..12

*Milligan v. GEICO Gen. Ins. Co.*,
   No. 16-cv-240 (JMA) (GRB), 2017 WL 9939046 (E.D.N.Y. July 14, 2017)
   ................................................................................. passim

*Milligan v. GEICO Gen. Ins. Co.*,
   No. 16-cv-240 (JMA) (GRB), 2018 WL 3632690 (E.D.N.Y. Mar. 31, 2018)
   ............................................................................ 10, 32, 33, 40

*Milligan v. GEICO Gen. Ins. Co.*,
   No. 20-3726-CV, 2022 WL 433289 (2d Cir. Feb. 14, 2022) ..................... passim

*Moss v. First Premier Bank*,
   835 F.3d 260 (2d Cir. 2016)..................................................................2

*Phi Epsilon Building Ass'n of Alpha Chi Ro, Inc. v. RSUI Indem. Co.*,
   No. 5:18-CV-547 (GLS/ATB), 2020 WL 972365 (N.D.N.Y. Feb. 28, 2020) ....24

*Quick Response Commercial Division, LLC v. Cincinnati Ins. Co.*,
   No. 1:14-cv-779 (GLS/DEP), 2015 WL 5306093 (N.D.N.Y. Sept. 10, 2015) ...24

*Richardson Greenshields Sec., Inc. v. Lau*,
   825 F.2d 647 (2d Cir. 1987)..................................................................2

*Salas v. GE Oil & Gas*,
   857 F.3d 278 (5th Cir. 2017) ..................................................................2

*Sinclair Wyoming Refining Company v. Infrassure, Ltd.*,
   970 F.3d 1317 (10th Cir. 2020) ............................................... 5, 28, 29

*SR Int'l Bus. Ins. Co. v. World Trade Ctr. Properties, LLC*,
    381 F. Supp. 2d 250 (S.D.N.Y. 2005) ....................................................44

*SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props., LLC*,
    No. 01 Civ. 9291, 2004 WL 2979790 (S.D.N.Y. Dec. 1, 2004) ........................45

*SR Int'l Business Ins. Co. Ltd. v. World Trade Ctr. Props. LLC*,
    No. 01 Civ. 9291, 2003 WL 1344882 (S.D.N.Y. Mar. 18, 2003) .............. 43, 44

*State Farm Fire & Cas. Co. v. Middleton*,
    648 So. 2d 1200 (Fla. Dist. Ct. App. 1995) ........................................27

*Thyssen, Inc. v. Calypso Shipping Corp., S.A.*,
    310 F.3d 102 (2d Cir. 2002)........................................................20

*Zarour v. Pacific Indem. Co.*,
    113 F. Supp. 3d 711 (S.D.N.Y. 2015) ...............................................30

## Statutes

9 U.S.C. § 4 ............................................................................25

9 U.S.C. § 16 ............................................................................2

28 U.S.C. § 1332(d)(2)....................................................................1

New York GBL § 349.....................................................................12

N.Y. Ins. L. § 3408(c) ..................................................................30

## Regulations

N.Y. Comp. Codes R. & Regs. tit. 11, § 216.7(c)(3)................................8

## Other Authorities

44A Am. Jur. 2d Insurance § 1668 .......................................................28

## IV. JURISDICTIONAL STATEMENT

Plaintiff-Appellee Lorena Milligan ("Plaintiff") commenced the underlying putative class action, individually and on behalf of others similarly situated, against GEICO General Insurance Company ("GEICO")[1] in the United States District Court for the Eastern District of New York. *See* A67-84; Complaint (ECF 1).[2] The District Court has original subject matter jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because the Complaint asserts claims on behalf of a purported class of over 100 putative members, that includes citizens of a state different from Defendants' home state, and alleges that the aggregate amount in controversy is greater than $5,000,000. A69 ¶ 13.

The District Court (Irizarry, U.S.D.J.) entered its order denying GEICO's request to compel appraisal on October 12, 2022.[3] A122, A145-146, A154:8-12;

---

[1]A67-84 refers to pages 67-84 of Appellant's Appendix filed herewith and all other references to "A__-__" follow suit. ECF 1 refers to docket entry 1 in the underlying case, 2:16-cv-00240-DLI-RML and later "ECF_" references follow suit.

[2]Plaintiff also named CCC Information Services Inc. ("CCC") as a defendant, but CCC was later dismissed from the case.

[3]As required by Judge Irizarry's local rules, GEICO filed a Letter Motion for Pre-Motion Conference to discuss GEICO's intent to file a motion to compel Plaintiff to participate in, and be bound by, the extrajudicial appraisal remedy in the Policy's Appraisal Provision. *See* A116-118. The District Court denied GEICO's Letter Motion, thereby denying GEICO its contractual right to compel Plaintiff to participate in, and to be bound by, the extrajudicial appraisal remedy set forth in the Plaintiff's auto insurance policy with GEICO. *Id*. at A122, A145-146, A154:8-12; Not. of Filing of Tr. (ECF 114). The District Court also later reiterated that it

Not. of Filing of Tr. (ECF 114). GEICO filed a timely notice of appeal on November 10, 2022. A123-125. This Court has jurisdiction over this appeal under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 16(a)(1), which provides for an appeal as of right from an order denying a motion to compel arbitration.

## V.  **STATEMENT OF ISSUES**

The issues presented to this Court on appeal are as follows:

1.     Whether the District Court erred by denying GEICO's motion to compel Plaintiff to participate in, and be bound by, the extrajudicial appraisal process set forth in the parties' contractual agreement.

2.     Whether the District Court erred by failing to interpret the appraisal provision of the parties' contractual agreement as an extrajudicial remedy.

---

"den[ied] Defendants' request to compel appraisal of the total loss vehicle." November 14, 2022, Order Denying GEICO's Motion to Stay Pending Appeal (no ECF number).

The District Court's order, which conclusively denied GEICO's right to arbitration pursuant to the Policy's appraisal provision, is appealable pursuant to 9 U.S.C. § 16. *Cf., e.g.*, *Moss v. First Premier Bank*, 835 F.3d 260, 264 (2d Cir. 2016) (concluding appellate jurisdiction existed over an order effectively refusing a stay); *Salas v. GE Oil & Gas*, 857 F.3d 278, 280 (5th Cir. 2017) (concluding appellate jurisdiction existed over an order that in essence denied an application to compel arbitration). Alternatively, if this Court determines that it does not have jurisdiction, GEICO respectfully requests that this Court treat this appeal as a petition for a writ of mandamus and order the District Court to permit GEICO to file its motion to compel appraisal. *See generally Richardson Greenshields Sec., Inc. v. Lau*, 825 F.2d 647, 652 (2d Cir. 1987).

## VI.   <u>INTRODUCTION</u>

When Plaintiff contracted for an auto insurance policy with GEICO (the "Policy"), she agreed with GEICO to submit disputes over the amount of loss incurred by covered "direct and accidental loss of or damage to" her vehicle to an extrajudicial panel of appraisers to make a binding determination of the amount of loss.  Despite its tortured procedural history, GEICO's contractual right to appraisal is no longer premature and is now ripe, and GEICO simply seeks enforcement of this right.

In the first appeal in this case, this Court held this appraisal provision is arbitration under the Federal Arbitration Act and mandatory once demanded. GEICO had demanded its contractual right to appraisal.  This Court ruled, however, that the exercise of that right was premature and not yet ripe.  It ruled that the right could not be enforced at that time because a threshold legal issue had to be resolved first by the District Court.  The parties then conducted motion practice regarding the threshold legal issue and dismissed Plaintiff's complaint.

In the second appeal in this case, this Court resolved that threshold legal issue, reversing the District Court in part.  It remanded in part, making the parties' dispute now a factual disagreement about the amount of loss that is squarely within the scope of the Policy's appraisal provision.

Now the Policy's appraisal provision is ripe for enforcement, GEICO's original pending demand for appraisal became ripe too. GEICO nevertheless renewed its demand to submit the dispute over the amount of loss to the extrajudicial panel of appraisers specified in the Policy's mandatory appraisal provision. Plaintiff failed to respond, effectively refusing GEICO's appraisal demand. In light of Plaintiff's refusal, GEICO requested the District Court compel Plaintiff to comply.

Yet, despite recognizing appraisal is now an appropriate means to determine the amount of Plaintiff's loss, the District Court disregarded the parties' agreed-upon extrajudicial remedy for resolving this dispute, instead concluding the *District Court* will determine the amount of loss using appraisers as testifying experts. The District Court ordered the parties to retain experts (possibly including appraisers) and present evidence of the amount of loss to the *court*, relegating use of appraisers to, at most, expert witnesses who may assist the court's determination. In other words, the District Court converted the parties' extrajudicial remedy into a judicial remedy.

This was reversible error. Following this Court's resolution of how to *define* the requirements to measure the amount of loss, which was a legal question beyond the scope of appraisal, all that now remains is to *compute* the amount of loss, which is a factual determination well within the scope of the Policy's mandatory appraisal provision. Indeed, both this Court and the District Court (before the *Milligan I* appeal) endorsed appraisal as an appropriate means to determine the amount of loss

4

at this juncture of the case. Further, the District Court's prior determination that GEICO's initial demand for appraisal was untimely, which was never ruled upon by this Court, was clearly erroneous. Because the Policy's appraisal provision is now ripe and the dispute is squarely within its scope, the District Court was required to enforce the mandatory appraisal provision and compel Plaintiff to participate in, and be bound by, the extrajudicial appraisal process to which the parties agreed.

By denying GEICO's request to compel enforcement of the contracted-for extrajudicial appraisal remedy, the District Court acted in direct contravention of the parties' contractual agreement, the FAA's requirements, and the strong policies favoring appraisal and arbitration. "Pursuant to the parties' agreement, and as a general matter of New York law, questions concerning valuation of the loss, as opposed to coverage under the Policy, must be submitted to appraisal." *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 279 F. Supp. 2d 235, 241 (S.D.N.Y. 2003), *aff'd as modified*, 411 F.3d 384 (2d Cir. 2005). By converting the parties' extrajudicial appraisal remedy, "[t]he obvious point of [which] is to keep a jury or court out of that decision," *Farmers Auto. Ins. Ass'n v. Union Pac. Ry. Co.*, 768 N.W.2d 596, 606-07 (Wis. 2009), into a judicial remedy, the District Court improperly "rob[bed] the parties of the opportunity to have their dispute resolved according to their agreement," *Sinclair Wyoming Refining Company v. Infrassure,*

*Ltd.*, 970 F.3d 1317, 1324 (10th Cir. 2020) (interpreting New York law), and its decision should be reversed.

GEICO respectfully requests that this Court reverse the District Court's decision and instruct the District Court to compel the parties to participate in, and be bound by, the extrajudicial appraisal remedy set forth in the Policy's appraisal provision.

## VII.  STATEMENT OF THE CASE

This appeal arises out of an insurance dispute regarding a total loss to Plaintiff's current model year vehicle.  Plaintiff filed the underlying putative class action against GEICO, claiming GEICO undervalued her vehicle, and that GEICO had, as a result, paid her less than it should have under the Policy and the governing New York insurance regulation.  On remand from the second appeal in this case, GEICO filed a Letter Motion requesting a pre-motion conference to discuss its intent to move to enforce the extrajudicial appraisal remedy in the Policy.[4]  A116-118.  At the pre-motion conference, the District Court denied GEICO's Letter Motion and declined to compel the parties to engage in their agreed-upon extrajudicial appraisal remedy.  A122, A145-146, A154:8-12; Not. of Filing of Tr. (ECF 114).

---

[4]*See* n.3, *supra* (discussing Judge Irizarry's rules requiring this process).

A. **Plaintiff's Policy**

In March 2015, Plaintiff leased a 2015 Lexus automobile. *See* A88. She obtained a GEICO New York Family Automobile Insurance Policy to insure her vehicle. A20-59. In the Policy, the parties agreed that if there is a total loss, GEICO will pay up to the actual cash value of the loss vehicle. A33. Loss means "direct and accidental loss of or damage to[] the auto, including its equipment . . . ." A31. Actual cash value "is the replacement cost of the auto or property less ***depreciation*** or ***betterment***." *Id*. (emphases in original).

The Policy contains an appraisal provision (the "Appraisal Provision") which, when demanded by either party, invokes a mandatory extrajudicial appraisal process through which specified third-party appraisers and an umpire conclusively determine the amount of loss:

If we and the ***insured*** do not agree on the amount of ***loss***, either may, within 60 days after proof of ***loss*** is filed, demand an appraisal of the ***loss***. In that event, we and the ***insured*** will each select a competent appraiser. The appraisers will select a competent and disinterested umpire. The appraisers will state separately the ***actual cash value*** and the amount of the ***loss***. If they fail to agree, they will submit the dispute to the umpire. An award in writing of any two will determine the amount of ***loss***. We and the ***insured*** will each pay his chosen appraiser and will bear equally to other expenses of the appraisal and umpire.

We will not waive our rights by any of our acts relating to appraisal.

A34 (emphases in original).

### B.      **Plaintiff Initiates The Underlying Class Action**

In May 2015, Plaintiff's vehicle was totaled in a rollover, and she submitted a claim to GEICO.  A71 ¶¶ 20-21.  GEICO paid Plaintiff's lienholder, Toyota Lease Trust, $45,924 on the claim after deducting Plaintiff's $500 deductible.  A72 ¶ 32; ECF 37-3 at 3.  On January 15, 2016, months after accepting GEICO's payment, Plaintiff initiated the underlying putative class action, alleging GEICO underpaid the actual cash value of her loss vehicle.  A68 ¶ 2, A72 ¶ 34, A76 ¶ 54, A81 ¶ 92; Complaint (ECF 1).    Plaintiff alleges her vehicle was a "current model year vehicle,"[5] A71 ¶ 22, and GEICO's settlement payment breached the Policy by allegedly underpaying the amount required by Title 11, Section 216.7 of the New York Codes, Rules and Regulations ("Regulation 64").  *Id.*  Regulation 64 requires insurers, in the case of a total loss of a current model year vehicle, to reimburse to the insured "the reasonable purchase price . . . on the date of loss of a new identical vehicle, less any applicable deductible and an allowance for depreciation."  Plaintiff alleges GEICO used the "adjusted vehicle value" or "market value" to calculate her

---

[5] A "current model year" vehicle is "a current model year automobile that has not been superseded in the marketplace by an officially introduced succeeding model, or an automobile of the previous model year purchased new within 90 days prior to the date of loss."  N.Y. Comp. Codes R. & Regs. tit. 11, § 216.7(c)(3).

loss in lieu of the statutorily-required "reasonable purchase price" and, as a result, GEICO allegedly failed to fully compensate her for the true vehicle replacement value.  A68 ¶ 2, A72 ¶ 34, A76 ¶ 54, A81 ¶ 92.

### C.   GEICO Demands The Extrajudicial Binding Appraisal Process Set Forth In Plaintiff's Policy

Based on the dispute over the amount of loss, on March 8, 2016, GEICO demanded that Plaintiff submit to appraisal pursuant to the Policy's contractual Appraisal Provision.  A61-63.  Plaintiff refused.  A65-66.

GEICO subsequently filed a motion to dismiss that, in pertinent part, sought to compel appraisal pursuant to the Policy's Appraisal Provision.[6]  Mem. In Support of Mtn. to Dismiss (ECF 35) at 13-14, Reply In Support of Mtn. to Dismiss (ECF 39) at 5-6.  The Magistrate recommended denying this portion of GEICO's motion, concluding GEICO's appraisal demand was untimely, and suggesting the appraisal would effectively constitute an impermissible legal opinion on the extent and nature of the coverage provided under the Policy. *Milligan R & R,* 2017 WL 9939046 at *9-10.  GEICO objected to the recommendation, Objection to July 14, 2017, R&R

---

[6]GEICO made this argument as part of a motion to dismiss, but because it required consideration of "extraneous factual materials submitted by the parties," the District Court converted this portion of the motion to dismiss into one for summary judgment. *Milligan v. GEICO Gen. Ins. Co.*, No. 16-cv-240 (JMA)(GRB), 2017 WL 9939046, at *9 (E.D.N.Y. July 14, 2017) ("*Milligan R & R*") (ECF 56).

(ECF 56), Reply In Support of Objection to July 14, 2017 R&R (ECF 60); and the District Court adopted the recommendation to deny the motion to compel appraisal without further discussion. *Milligan v. GEICO Gen. Ins. Co.*, No. 16-cv-240 (JMA)(GRB), 2018 WL 3632690 (E.D.N.Y. Mar. 31, 2018) ("*Milligan 2018 District Court Ruling*") (ECF 62).

### D. This Court Concludes The Appraisal Provision Is Binding Arbitration, But Concludes The Appraisal Provision Cannot Be Enforced Because There Is A Threshold Legal Issue That Must Be Resolved

GEICO appealed from the District Court's order denying its motion to compel appraisal, Notice of Appeal (ECF 65), challenging, *inter alia*, the District Court's rulings that GEICO's demand to invoke the Appraisal Provision was untimely, that the process in the Appraisal Provision was voluntary, and that an appraisal was 'impractical or impossible,' and something less than 'desirable or necessary,' and would "constitute little more than an opinion on the extent and nature of coverage under the policy." August 20, 2018, Opening Brief for Defendant-Appellant GEICO in Case No. 18-1405, Document 51, at 12, 16-26.

On appeal, this Court held the Policy's Appraisal Provision is arbitration subject to the FAA. A95-99; *Milligan v. CCC Info. Servs. Inc.*, 920 F.3d 146, 151-52 (2d Cir. 2019) ("*Milligan I*"). The Appraisal Provision "identifies a category of disputes (disagreements between the parties over 'the amount of loss')," it "provides for submission of those disputes to specified third parties (namely, two appraisers

10

and the jointly-selected umpire)," and it "makes the resolution by those third parties of the dispute binding (by stating that [a]n award in writing of any two *will determine* the amount of the loss)." *Id*. at 152 (emphasis in original) (internal quotations omitted). Further, it concluded that "[c]ontrary to the district court's conclusion," when either side invokes the Appraisal Provision, "appraisal is mandatory." *Id*. at 152 n.4.

However, this Court affirmed the District Court's denial because GEICO's pending demand for appraisal was premature and not yet ripe since at that point in time, the dispute "concern[ed] a legal issue about the meaning of Regulation 64"; namely, "the meaning of 'the reasonable purchase price to the insured on the date of loss of a new identical vehicle.'" *Id*. at 153-54. Because "the disagreement present[ed] a legal question regarding the meaning of Regulation 64, which [wa]s for the District Court to decide," the dispute at that time was not within the scope of an appraisal, because "[a]n appraisal is appropriate not to resolve legal questions, but rather to address factual disputes over the amount of loss for which an insurer is liable." *Id*. at 154, 153 (quotations omitted). This Court affirmed the District Court's denial based solely on the outstanding legal issue. *Id*.

This Court specifically declined to address the District Court's untimeliness ruling, explaining, "[b]ecause we conclude that the question in dispute is not within

11

the proper scope of an appraisal, we need not decide whether GEICO timely demanded appraisal." *Id.* at 154 n.6.

**E.** **_Milligan II_ Resolves The Threshold Legal Issue That Rendered Appraisal Premature In _Milligan I_**

On remand, GEICO filed a motion to dismiss that, among other things, addressed the legal issue identified in *Milligan I*. Mem. In Support of Mtn. to Dismiss (ECF 79). The District Court granted the motion and dismissed Plaintiff's case in its entirety, based in part on its determination of the meaning of "reasonable purchase price . . . of a new identical vehicle." *Milligan v. GEICO Gen. Ins. Co.*, No. 16-CV-240 (DLI)(RML), 2020 WL 5878406, at *4-5, *12 (E.D.N.Y. Sept. 30, 2020) (ECF 90).

Plaintiff appealed. Not. Of Appeal (ECF 92). On appeal, this Court remanded Plaintiff's breach of contract and New York GBL § 349 claims alleging GEICO underpaid Plaintiff's total loss claim, and affirmed the dismissal of Plaintiff's remaining claims. A106-115; *Milligan v. GEICO Gen. Ins. Co.*, No. 20-3726-CV, 2022 WL 433289, at *3-4, 7 (2d Cir. Feb. 14, 2022) (*Milligan II*). Importantly, this Court resolved the precise legal question regarding the meaning of Regulation 64 that rendered GEICO's initial demand for appraisal premature in *Milligan I*, by defining "the meaning of the phrase 'reasonable purchase price . . . of a new identical vehicle' within the context of Regulation 64, and how such a price must be determined." *Milligan II*, 2022 WL 433289, at *3.

12

This Court concluded Regulation 64 requires insurers to pay "the price that a reasonable buyer would pay to purchase an identical, brand new, factory-fresh car from the local dealership in the normal course of business" on the date of loss in the relevant geographic area, less any applicable deductible and depreciation. *Id*. at *4 (quotations omitted). This Court also opined "the price of such a new car might well be different from what the same car cost at the time the lost vehicle was originally purchased, depending on the proximity to the release of a new model or other vagaries of the marketplace. Accordingly, specifying that the price is on the date of loss makes a meaningful difference in determining how much compensation is owed to the insured." *Id*. at *4 n.4.

In discussing possible ways in which the reasonable purchase price could be estimated, this Court made clear that use of appraisal to calculate this price complies with Regulation 64, endorsing use of appraisers to extrapolate the reasonable purchase price from the sale of nearly identical vehicles where (as is the case here) there are no "identical" vehicles, sold within the relevant geographic area reasonably near to the time of the loss, available for comparison. *Id*.

**F.  <u>Now That Appraisal Is Ripe, GEICO Again Demands Compliance With The Appraisal Provision</u>**

Once *Milligan II* resolved the threshold legal question that rendered GEICO's initial appraisal demand premature in *Milligan I*, only a factual dispute over Plaintiff's amount of loss remained. GEICO's original appraisal demand from

13

March 2016 was still pending. Two weeks after *Milligan II* remanded the case, GEICO nevertheless renewed its demand for the appraisal process in the Policy's mandatory Appraisal Provision. A117. Plaintiff did not respond, *id*., and GEICO sought permission to file a motion to compel Plaintiff to participate in, and be bound by, the extrajudicial appraisal process in the Policy's Appraisal Provision. A116-118 (the "Letter Motion").

Therein, GEICO explained it "now seeks to compel appraisal in light of the Policy's mandatory appraisal provision and the Second Circuit's explicit endorsement of the use of appraisal in cases such as this where no 'identical' vehicles are available for comparison." A117. It maintained "[t]he parties' dispute over the valuation of the Plaintiff's loss vehicle should be determined pursuant to the mandatory appraisal provision in Plaintiff's auto insurance policy." A118. GEICO further explained its appraisal demand was timely, and the District Court previously erred in concluding otherwise. A117-118.

Plaintiff opposed, and "request[ed] that Defendants Pre-Motion Letter requesting an appraisal and staying the case be denied." A121. Plaintiff argued *Milligan I* already decided the appraisal issue, and also argued "[a]n appraisal of the loss vehicle is not required, is burdensome and is delaying furtherance of the case . . . [and] will not provide usable information for the current claim." A120. According to Plaintiff, "[t]he valuation of the loss vehicle will be determined through the MSRP

value of the 2015 Lexus in the year 2015." *Id*. Plaintiff further argued GEICO failed to timely request appraisal of the vehicle. *Id*. And, Plaintiff argued "[t]here is no basis to appraise the loss vehicle" because such appraisal would be "inaccurate due to the deterioration of a loss vehicle over time," including "rust and other imperfections." *Id*.

### G. The District Court Erroneously Deprives GEICO Of Its Contractual Right To The Extrajudicial Appraisal Remedy

On October 12, 2022, the District Court held a Pre-Motion Conference regarding GEICO's Letter Motion. A147-163; Not. of Filing of Tr. (ECF 114). The District Court stated "the valuation of the total loss vehicle under Regulation 64 must be determined through the reasonable purchase price" as defined in *Milligan II*; thus, "the parties must determine the price that a reasonable buyer and a reasonable seller would have to agree upon for a brand-new vehicle of the same make and model as the total loss vehicle at the time of the loss," "on or around May 15, 2015." A152. Noting "the MSRP or sticker price" only "provides the starting point for the negotiated sale between buyers and sellers," the District Court explained "sales records from local car dealerships may prove useful to identify identical vehicles and the agreed-upon prices on or around May 15, 2015." A152-153. Where no identical vehicles sold in the relevant geographic area reasonably close to the time of the loss are available for comparison (as is the case here), "[t]he Second Circuit

15

endorsed the use of a professional appraiser to extrapolate a reasonable purchase price from the sale price of nearly identical vehicles." A153.

The District Court's only reference to the Appraisal Provision was to state *Milligan II* "did not endorse appraisal of the total loss vehicle." A153. The District Court is mistaken. *Milligan II* endorsed the use of appraisal of the total loss vehicle, guided by its interpretation of New York law. 2022 WL 433289, at *4. This Court instructed insurers to "extrapolate a reasonable purchase price [of the loss vehicle] from the sale price of *nearly* identical cars with the aid of a professional appraiser" in order to determine the reasonable purchase price of a new identical vehicle. *Id.* Appraisers are part of the extrajudicial appraisal remedy, and the appraisal of the loss vehicle fits squarely within this Court's directives.

The District Court made clear appraisal is now ripe, explaining, "[t]he Circuit said: this is how you determine the value. So they've already set forth what the method is, and the Circuit said that you can get an appraiser . . . ." A159:10-13; *see also* A158:17-21 ("[T]he Circuit . . . was clear that the parties can use the services of an appraiser to determine what the purchase price was of a similar brand-new vehicle at the time of the total loss and within that geographic area."); A158:1-6 ("[T]he Circuit made that clear that you can [use an appraiser]"); A155:15-19 ("The Circuit said you can use an appraiser . . . to help you, number one, find what the price was for a brand-new 2015 Lexus that had whatever features matched the total

16

loss vehicle"); A155:24-A156:2 (opining "an appraiser could assist" in determining depreciation); A157:11-14 ("[T]he Circuit said that's fine, that you can use a professional appraiser to do that; right? Because they will know . . . how do you find that information.").

Although the District Court explained *Milligan II*'s directives governing how to determine the amount of loss, and recognized that use of an appraiser is now an appropriate means to determine the amount of loss, it disregarded the parties' agreed-upon extrajudicial remedy in which to resolve this dispute over the amount of the loss, which requires the parties to submit their dispute over the amount of loss to an *extrajudicial panel of appraisers*, **not the court**, for *those appraisers*, **not the court**, to conclusively determine the amount of loss. Rather, the District Court summarized *Milligan II*'s holdings and simply concluded that "[a]s such, defendants request for a leave to file a motion on the issue is denied, and the request for a stay is denied as unnecessary." A154:8-10.

Instead of requiring the parties to resolve this dispute through their agreed-upon extrajudicial remedy, the District Court held the parties could use experts (possibly including appraisers) in the litigation to assist the *court's* determination of the amount of loss. The District Court opined, "if [Plaintiff] wants to get [her] expert and defendants want to get their expert, you work on it for the next 60 days and let's see where we are," A161:1-4, A160:7-18, and instructed the parties to file a joint

status report.  A154:13-18, A161:15-17, A162:16-17.  It also confirmed "whoever the parties select," whether appraiser or otherwise, "will be subject to the standard rules . . . that apply to all experts . . . ."  A162:18-25.

Denied its contractual right to compel Plaintiff to participate in, and to be bound by, the extrajudicial remedy in the Policy's Appraisal Provision, GEICO filed the present appeal.  A123-125.

## VIII.  <u>SUMMARY OF THE ARGUMENT</u>

The extrajudicial process in the Policy's Appraisal Provision, through which the parties agreed to submit disputes over the amount of loss to a panel of appraisers for those appraisers to make a binding determination of the amount of loss, is arbitration under the FAA.  *Milligan I*, 920 F.3d at 152.  And when demanded by either party, the Appraisal Provision is mandatory.  *Id*. at 152 n.4.  The District Court reversibly erred in declining to enforce it.

GEICO timely and properly demanded appraisal pursuant to the Appraisal Provision, and the District Court's initial order determining otherwise was clearly erroneous.  It maintained its demand for appraisal despite court intervention to resolve legal issues.  Further, following *Milligan II*'s resolution of the legal issue that rendered appraisal premature in *Milligan I*, the parties' dispute over the amount of loss is now squarely within the scope of, and ripe to be resolved by, the extrajudicial appraisal remedy in the Appraisal Provision.  Thus, upon Plaintiff's

refusal to comply and GEICO's motion to compel, the District Court was required to direct the parties to proceed to the extrajudicial appraisal remedy in which they agreed to resolve this dispute. "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original).

This clear requirement notwithstanding, the District Court disregarded the parties' agreed-upon extrajudicial remedy to resolve their dispute over the amount of loss. Instead, it improperly kept this dispute in the court, concluding that the District Court would determine the amount of loss. And its ruling made clear that appraisers would, at most, serve as expert witnesses that may assist the District Court's determination of the amount of loss, a role that is fundamentally different from appraisers making a binding determination of the amount of loss through extrajudicial resolution of the dispute. The District Court reversibly erred by acting in direct contravention of the parties' agreement and the FAA's requirements, and its error is further compounded by the fact that appraisals and arbitration are strongly favored in the law.

19

GEICO respectfully requests this Court reverse the District Court's order and direct the District Court to compel the parties to participate in, and be bound by, the extrajudicial appraisal remedy to which they agreed.

## IX.   STANDARD OF REVIEW

This Court reviews *de novo* a district court's decision on a motion to compel arbitration.  *Milligan I*, 920 F.3d at 152; *Daly v. Citigroup Inc.*, 939 F.3d 415, 421 (2d Cir. 2019).   Similarly, this Court reviews the district court's determination that a party waived arbitration *de novo*, but reviews factual findings upon which it relied for clear error.  *Thyssen, Inc. v. Calypso Shipping Corp., S.A.*, 310 F.3d 102, 104 (2d Cir. 2002).  This Court reviews contract interpretation issues *de novo*.  *Lee v. BSB Greenwich Mortg. Ltd. P'ship*, 267 F.3d 172, 178 (2d Cir. 2001).

## X.   ARGUMENT

### A.   Following *Milligan II*, Appraisal Is Now Ripe And The District Court Was Required To Enforce The Appraisal Provision

In *Milligan I*, this Court concluded the extrajudicial appraisal remedy in the Policy's Appraisal Provision is binding arbitration, but affirmed the District Court's denial solely because, at that time, a threshold legal question rendered appraisal premature: the meaning of the phrase "reasonable purchase price . . . on the date of loss of a new identical vehicle" in Regulation 64.  920 F.3d at 154.  Because the "reasonable purchase price . . . on the date of loss of a new identical vehicle" needed to be ***defined*** (a legal question outside the scope of appraisal) before it could be

*computed* (a factual determination within the scope of appraisal), the dispute at that time was not yet ripe for submission to the extrajudicial appraisal process to which the parties agreed. Thus, this Court affirmed, instructing the district court to decide the meaning of "reasonable purchase price . . . of a new identical vehicle." *Id*. GEICO's pending demand for appraisal was premature because this threshold legal issue had to be resolved. The demand for appraisal has remained pending until this date.

In *Milligan II*, this Court conclusively resolved the threshold legal question that prevented appraisal at the time of *Milligan I*. 2022 WL 433289 at *3. It concluded "the reasonable purchase price . . . of a new identical vehicle is the price that a reasonable buyer would pay to purchase an identical, brand new, factory-fresh car from the local dealership in the normal course of business," *id*. at *4 (quotations omitted), and opined "the price of such a new car might well be different from what the same car cost at the time the lost vehicle was originally purchased, depending on the proximity to the release of a new model or other vagaries of the marketplace." *Id*. at *4 n.4. "[S]pecifying that the price is on the date of loss makes a meaningful difference in determining how much compensation is owed to the insured." *Id*.

GEICO's duty is to pay for the "loss," and the Policy limits GEICO's liability to the "actual cash value" of the loss vehicle. A33. Following *Milligan II*, all that remains is the factual dispute over the amount of loss: *i.e.*, the difference, if any,

between the amount GEICO paid to Plaintiff and "the price that a reasonable buyer would pay to purchase an identical, brand new, factory-fresh car from the local dealership in the normal course of business" on the date of loss in the relevant geographic area, less any deductible and depreciation. *Milligan II*, 2022 WL 433289 at *4.

This dispute is now squarely within the scope of the Policy's mandatory Appraisal Provision. After *Milligan I* and before *Milligan II*, GEICO's always-pending demand for appraisal was premature and not ripe. *Milligan II* made the pending appraisal demand ripe. It made clear that use of the extrajudicial appraisal remedy to determine the amount of the loss is in compliance with Regulation 64, endorsing use of appraisers to extrapolate the reasonable purchase price from the sale of nearly identical vehicles where (as is the case here) no "identical" vehicles, sold in the relevant geographic area reasonably near to the time of loss, are available for comparison. *Id*. And the District Court repeatedly affirmed it is now appropriate to use appraisers at this juncture of the case. A159:9-14, A153:18-21, A155:15-19, A158:17-21, A158:1-6. Even Plaintiff appears to concede this point: she previously argued that "[w]hile it is true there is a dispute over the monetary amount owed to Plaintiff, the relevant questions concern whether GEICO has acted in accordance with Regulation 64," and contended her claims presented "a coverage dispute and legal question which cannot be resolved by an appraiser." Pl. Resp. to Objs. to July

22

14, 2017 R&R (ECF 58) at 10.  But after *Milligan II* answered the coverage dispute and legal question, in Plaintiff's own words, all that remains is the "dispute over the monetary amount owed to Plaintiff."  *Id*.

*Duane Reade* is instructive on the issue.[7]  279 F. Supp. 2d at 241.  *Duane Reade* concerned a dispute over the scope of the term "Restoration Period" in the parties' insurance policy.  *Id*. at 238.  The insurer sought to compel the appraisal process in the policy, and its motion was initially denied as premature because the dispute went to defining what was meant by the Restoration Period, which "was a coverage issue" the court reserved for itself.  *Id*.; *Duane Reed, Inc. v. St. Paul Fire & Marine Ins. Co.*, 261 F. Supp. 2d 293 (S.D.N.Y. 2003).  Critically, however, once the court resolved that legal issue, the remaining factual question of determining the actual date of the restoration period was ripe for resolution through the extrajudicial appraisal process.  The court explained:

> Turning to St. Paul's motion to have the **Policy-provided appraisers (as opposed to the Court or a jury)** determine the duration (in years and months) of the Restoration Period, the court agrees with St. Paul that such calculation falls within the appraisers' purview.  **Pursuant to the parties' agreement, and as a general matter under New York law, questions concerning valuation of the loss, as opposed to coverage under the Policy, must be submitted to appraisal.  Although defining what was meant by the Restoration Period was a coverage issue, now that that has been accomplished, the estimation of that period in order to help**

---

[7]Notably, *Milligan I* discussed this case to support its holding that an appraiser may not resolve legal questions.  920 F.3d at 153.

> **value the loss is a matter of valuation, not coverage.** Indeed, it is
> part of the kind of appraising that real estate, business, and insurance
> appraisers regularly undertake. Thus, although there is no New York
> case exactly on point, the entire thrust of the foregoing cases is to
> leave this kind of determination to the appraisers.

279 F. Supp. 2d at 241 (emphases added) (internal citations omitted); *see also*

*Amerex Grp., Inc. v. Lexington Ins. Co.*, 678 F.3d 193, 205 (2d Cir. 2012) (describing

*Duane Reade* and noting that "[o]nce the legal question was resolved, the factual

question of determining the actual date of the restoration period was well within the

panel's scope"). Applied here, the same result follows: the extrajudicial remedy in

the Appraisal Provision is now ripe, and the dispute must be submitted to appraisal.

Because the parties' Appraisal Provision is no longer premature and is ripe

for enforcement and the dispute falls squarely within its scope, because of GEICO's

pending demand for appraisal since March 2016 and/or upon GEICO's renewed

request following *Milligan II*, Plaintiff was "required to comply with the policy's

appraisal provision." *Quick Response Commercial Division, LLC v. Cincinnati Ins.*

*Co.*, No. 1:14-cv-779 (GLS/DEP), 2015 WL 5306093, at *4 (N.D.N.Y. Sept. 10,

2015); *see also Phi Epsilon Building Ass'n of Alpha Chi Ro, Inc. v. RSUI Indem.*

*Co.*, No. 5:18-cv-547 (GLS/ATB), 2020 WL 972365, at *1-2 (N.D.N.Y. Feb. 28,

2020) (compelling appraisal where "the only remaining issue is value").

And, upon GEICO's request to compel enforcement following Plaintiff's

refusal to comply, the District Court was required to enforce the Appraisal Provision

as written. 9 U.S.C. § 4; *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) ("The principal purpose of the FAA is to ensur[e] that private arbitration agreements are enforced according to their terms." (Internal quotations omitted)). "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds*, 470 U.S. at 218 (emphasis in original); *see also Daly*, 939 F.3d at 421 (when determining scope of arbitrable issues, the court "will compel arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute" (internal quotations omitted)); *Fort Miller Co. v. Am. Transp., Inc.*, No. 1:12-CV-681 FJS/RFT, 2013 WL 773108, at *5 (N.D.N.Y. Feb. 28, 2013) ("[FAA] Section 4 severely limits the court's role in considering motions to compel arbitration."). The District Court reversibly erred in declining to do so. A151:1-2, A154:8-12.

## B. <u>The District Court Erred By Depriving GEICO Of Its Contractual Right To The Extrajudicial Binding Appraisal Process Set Forth In The Policy</u>

By failing to enforce the Appraisal Provision setting forth an extrajudicial remedy and instead keeping the dispute in the court, the District Court contravened the parties' agreement, the FAA's requirements, and the strong policies favoring appraisals and arbitration. Its decision must be reversed.

     *i.*    *The District Court Erroneously Converted The Parties'*
               *Extrajudicial Remedy Into A Judicial Remedy*

In no uncertain terms, the Appraisal Provision requires the parties to submit disputes over the amount of loss to a panel of appraisers for an extrajudicial and binding resolution on the issue. The Appraisal Provision "identifies a category of disputes (disagreements between the parties over 'the amount of loss')," it "provides for submission of those disputes to **specified third parties** (namely, two appraisers and the jointly-selected umpire)," and it "makes the resolution **by those third parties** of the dispute **binding** (by stating that [a]n award in writing of any two *will determine* the amount of the loss)." *Milligan I*, 920 F.3d at 152 (bold emphases added). And when invoked by either party, this "appraisal is mandatory." *Id*. at 152 n.4.

The District Court erred by denying GEICO's motion to compel appraisal. A154:8-12. It was not permitted – using its letter procedure or otherwise – to convert this agreed-upon extrajudicial remedy for determining the amount of loss into a judicial one. "The obvious point of contracting for an appraisal process is to keep a jury or court out of that decision," and "[c]ourts have an obligation to enforce this aspect of an agreement between parties by asserting only limited power to review appraisal awards." *Farmers*, 768 N.W.2d at 606-07; *Calusa Bay N. Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:21-CV-540-JLB-NPM, 2022 WL 6162704, at *5 (M.D. Fla. Sept. 30, 2022) ("Appraisal is an extra-judicial means for parties to

26

avoid litigation on the issue of damages and instead have appraisers—who have far more expertise than the court or a jury in appraising property—to determine the amount of loss."); *State Farm Fire & Cas. Co. v. Middleton*, 648 So. 2d 1200, 1201 (Fla. Dist. Ct. App. 1995) (enforcing an appraisal clause, and agreeing that because "the parties have specifically agreed that that vital figure would be determined by arbitration, the parties' agreement to that effect should control"); *Meier v. Travelers Home & Marine Ins. Co.*, No. C15-0022RSL, 2015 WL 11571005, at *1 (W.D. Wash. Nov. 23, 2015) ("The parties contractually agreed that valuation would be handled by the experts, not by a judge or jury.").

By ordering the *parties* to submit evidence of the amount of loss to the *court so the court and not appraisers could decide the amount of the loss*, and making clear that appraisers could, at most, serve as the parties' expert witnesses in the litigation "subject to the standard rules . . . that apply to all experts," the District Court acted in complete contravention of the parties' agreement. *See* A162:18-25, A161:1-4, A160:7-18, A154:13-18. As one court described in analyzing language identical to the Appraisal Provision here, "[t]his clear appraisal provision clearly defines the contractual obligations of both parties in the event of an appraisal and the procedures to be employed," and "nothing in the contracted procedures for appraisal requires [an appraiser] to be identified as an expert, an expert report prepared, or for [opposing] counsel to be advised of [the] appraiser's positions."

*Langley v. GEICO Gen. Ins. Co., No.* 1:14-CV-3069-SMJ, 2014 WL 11395159, at *2 (E.D. Wash. Dec. 8, 2014). Rather, "the determination of actual cash value and the amount of loss is **left entirely to the independent interaction between the two selected appraisers and the appraisers' selected umpire**." *Id.* (emphasis added).

The District Court's error is further underscored by the substantive distinction between an appraiser making a binding determination, on the one hand, and an expert witness assisting a court determination, on the other. The parties agreed to the former and not the latter.

Unlike a trial court's review of an expert's proffered opinion, review of a binding appraisal award is extremely limited. "Absent a showing of fraud, bias, bad faith, misconduct, or a failure on behalf of appraisers to abide by the governing contract, courts will not set aside an appraisal award." *Sinclair*, 970 F.3d at 1324-25 (interpreting New York law); *Martinique Properties, LLC v. Certain Underwriters at Lloyd's London*, 567 F. Supp. 3d 1099, 1110 (D. Neb. 2021) (appraisal arbitral awards are owed an extraordinary level of deference); 44A Am. Jur. 2d Insurance § 1668 ("[C]ourts will not interfere with the award of appraisers selected by the insurer and the insured to appraise a loss under an insurance policy, except to prevent a manifest injustice, nor will the court substitute its own judgment for that of the appraisers or set aside the award for inadequacy or excessiveness absent corruption or partial bias on the part of the appraisers."). "The court's role

is not to determine whether the third party experts [*i.e.* the appraisers to whom the dispute is submitted] accurately valued the item (as if the court itself could do a better job), but whether the third party experts understood and carried out the contractually assigned task." *Farmers*, 768 N.W.2d at 606.

Nor is an appraiser making a binding determination subject to the same type or breadth of discovery as an expert witness. The Appraisal Provision provides "no opportunity for Plaintiff or his counsel for a 'points and counterpoints' and certainly no depositions." *Langley*, 2014 WL 11395159, at *2; *Mauna Kea Resort v. Affiliated FM Ins. Co.*, No. CV09094LDWWDW, 2009 WL 578529, at *1-2 (E.D.N.Y. Mar. 4, 2009) (concluding the insurer's appointed appraiser was protected from the discovery sought in the insured's subpoena).

The District Court's erroneous decision therefore "rob[s] the parties of the opportunity to have their dispute resolved according to their agreement, including the ability to have highly specialized calculations made by technical experts of the parties' choosing as opposed to unfamiliar and less-experienced members of the judiciary." *Sinclair*, 970 F.3d at 1325 (describing why only limited grounds will justify setting aside an appraisal award). The parties agreed to an extrajudicial remedy. The FAA requires the District Court to compel and enforce that extrajudicial remedy. The District Court refused to so compel and therefore erred.

ii. *The District Court's Ruling Also Contravened Strong Public Policies Favoring Appraisal And Arbitration*

Not only did the District Court err in declining to enforce the Appraisal Provision, it did so in a context in which any doubts should be resolved in *favor* of enforcing the Appraisal Provision. "New York public policy favors an appraisal proceeding over a trial on damages, and under New York law, waiver of the right to an appraisal is not lightly inferred." *Amerex*, 678 F.3d at 199 (quotations omitted). This is particularly so when "the dispute between the parties concerns the 'amount of loss,'" *Zarour v. Pacific Indem. Co.*, 113 F. Supp. 3d 711, 715-16 (S.D.N.Y. 2015), in this case, the actual cash value of a loss vehicle, as defined by this Court to mean the "the reasonable purchase price . . . on the date of loss of a new identical vehicle, less any applicable deductible and an allowance for depreciation." 2022 WL 433289 at *4; *see also id*. at *4 n.4 ("[S]pecifying that the price is on the *date of loss* makes a meaningful difference in determining how much compensation is owed to the insured." (Emphasis added)).

New York's pro-appraisal policy is reflected in the November 2014 amendment to section 3408(c) of the New York Insurance Law, providing that "[a]n appraisal shall determine the actual cash value, the replacement cost, the extent of the loss or damage and the amount of the loss or damage which shall be determined as specified in the policy and shall proceed pursuant to the terms of the applicable appraisal clause or the insurance policy . . . ." *Id.* (quoting N.Y. Ins. L. § 3408(c)).

30

In passing the amendment, the New York State Assembly specifically intended to encourage using appraisal as an efficient method to resolve valuation disputes, noting, "the Courts have taken a limited view as to what issues are subject to appraisal. This bill would clarify that the amount of the loss is a proper subject of arbitration. This change will result in substantial savings in litigation costs to both sides of a dispute." *Id.* (citation omitted).

These strong policies favor enforcement of the Appraisal Provision. *Cf. Farmers*, 768 N.W.2d at 607 (the appraisal process "is fair to both parties. It allows each to appoint an appraiser of their own liking, with a neutral umpire as the deciding vote. Appraisals also promote finality, are time and cost-efficient, and place a difficult factual question—the replacement value of the item—into the hands of those best-equipped to answer the question.").

The fact that the Appraisal Provision constitutes arbitration within the meaning of the FAA further favors its enforcement. "[I]t [is] beyond dispute that the FAA was designed to promote arbitration." *Concepcion*, 563 U.S. at 345. The FAA "reflects a legislative recognition of the desirability of arbitration as an alternative to the complications of litigation," and "[i]n accordance with the strong federal policy favoring arbitration as an alternative means of dispute resolution," a court resolves "any doubts concerning the scope of arbitrable issues in favor of arbitrability." *Daly*, 939 F.3d at 421 (internal quotations omitted). And "[i]n so

31

doing, [courts] will compel arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id*. (internal quotations omitted).

iii.   *The District Court's Error Spills Over To The Putative Class Action And Its Harm Is Compounded*

The error below is exponentially magnified because the case is a putative class action in which every member of the putative class agreed in their respective insurance policies with GEICO to the extrajudicial appraisal remedy to determine the amount of their loss. A73 ¶¶ 38, 40. The District Court's ruling as to Plaintiff's Appraisal Provision unambiguously portends that the District Court will render GEICO's rights under the FAA, and pursuant to *each agreement* with putative class members, nullities. And if the class is then certified, the extortive effect of such a class certification is extreme. *See, e.g.*, *Concepcion*, 563 U.S. at 350 (class actions can entail a "risk of 'in terrorem' settlements").

**C.    To The Extent The District Court's Prior Untimeliness Finding Has Not Already Been Rejected Or Overruled, The District Court Erred In Concluding GEICO's Demand To Invoke The Appraisal Provision Was Untimely**

Finally, GEICO's initial demand for appraisal was timely, as was its renewed demand following *Milligan II*. To the extent the District Court's prior finding of untimeliness has not already been rejected, it was erroneous and should be reversed. *Milligan R&R*, 2017 WL 9939046, at *9-10; *Milligan 2018 District Court Ruling*,

32

2018 WL 3632690. The District Court's prior untimeliness determination therefore does not preclude GEICO's entitlement to invoke the mandatory Appraisal Provision, nor does it mitigate the District Court's error in failing to enforce the Appraisal Provision.

      i.     *The District Court's Untimeliness Determination Has Already Been Rejected*

The District Court determined in 2018 that GEICO's demand to invoke appraisal was untimely. However, the subsequent rulings on the propriety of appraisal in *Milligan I* and *Milligan II* demonstrate this untimeliness determination has since been rejected. The District Court also implicitly rejected its untimeliness determination at the October 12, 2022, hearing. To the extent this determination somehow remains, this Court can and should reverse the District Court's erroneous untimeliness determination as part of this appeal.

In 2018, the District Court adopted the Magistrate Judge's R&R which denied GEICO's motion to compel appraisal on the bases that GEICO's demand to invoke the Appraisal Provision was untimely, the process in the Appraisal Provision was voluntary, and appraisal would "constitute little more than an opinion on the extent and nature of coverage under the policy," and under New York law an appraiser may not resolve legal questions regarding interpretation of the Policy. *Milligan R&R*, 2017 WL 9939046, at *9-10; *Milligan 2018 District Court Ruling*, 2018 WL 3632690. GEICO timely appealed the *Milligan 2018 District Court Ruling* and

33

challenged each basis for denial of appraisal. August 20, 2018, Opening Brief for Defendant-Appellant GEICO in Case No. 18-1405, Document 51, at 12, 20-26. On appeal, GEICO argued at length its demand was timely. *Id*.

In ruling on GEICO's appeal, this Court held the Appraisal Provision is arbitration subject to the FAA, *Milligan I*, 920 F.3d at 151-152, and further, "[c]ontrary to the district court's conclusion," the Appraisal Provision is mandatory. *Id*. at 152 n.4. However, this Court affirmed the District Court's denial *solely* because the dispute at that time concerned a threshold legal issue which needed to be resolved by the District Court, *id*. at 153-54, rendering appraisal at that time premature. *See, e.g.*, *id*. at 153 ("Applying *these* principles [governing the scope of an appraisal], we conclude that appraisal is not appropriate in this case." (emphasis added)). This Court did not address the District Court's untimeliness ruling, explaining, "[b]ecause we conclude that the question in dispute is not within the proper scope of an appraisal, we need not decide whether GEICO timely demanded appraisal." *Id*. at 154 n.6. Had this Court affirmed on untimeliness grounds, such an affirmance would have presumably mooted the need for this Court to address the proper scope of appraisal and rendered this Court's conclusions in *Milligan I* dicta. If GEICO's demand for appraisal was untimely, the District Court would resolve the dispute regardless of whether it concerned legal or factual issues.

After *Milligan I* and before *Milligan II*, GEICO's pending appraisal demand, which GEICO never withdrew, was still premature and not yet ripe. *Milligan II* resolved the threshold legal question that rendered GEICO's appraisal demand premature in *Milligan I*, thereby removing the only impediment to appraisal discussed in *Milligan I* and making GEICO's pending appraisal demand ripe. Additionally, *Milligan II* made clear that use of the extrajudicial appraisal remedy to determine the amount of the loss is in compliance with Regulation 64, endorsing use of appraisers to extrapolate the reasonable purchase price from the sale of nearly identical vehicles where (as is the case here) no "identical" vehicles, sold in the relevant geographic area reasonably near to the time of loss, are available for comparison. *Milligan II*, 2022 WL 433289 at *4.

Thus, as GEICO argued in its Letter Motion seeking to enforce its now-ripe pending appraisal demand, this Court's "handling of the appraisal issue and directions regarding appraisal necessarily rejected [the District] Court's ruling that appraisal was untimely sought." A117; A116 (also arguing *Milligan I* "side-stepped whether [the District] Court's untimeliness determination was correct . . ., holding there was a threshold legal issue to be resolved by [the District] Court," and that this Court "could have affirmed the untimeliness determination but did not—likely because it would have otherwise reversed on this basis, given the discussion at oral

argument" (citing Rec. of Oral Arg. At 19:03-19:25, *Milligan I* (Mar. 8 2019) (No. 18-1407-cv)).

GEICO also argued that to the extent the District Court's untimeliness determination had not already been overruled, the determination was erroneous and the District Court should reconsider and overrule its erroneous untimeliness determination:

> The Policy's appraisal provision provides, "<u>If we and the **_insured_** do</u> <u>not agree on the amount of *loss*</u>, either may, within 60 days after proof of *loss* is filed, demand an appraisal of the *loss*." Decl. of Barry I. Levy, Ex. B at 12 [Doc. 34-2] (underlining added, other emphases in original). There is a condition precedent to triggering the appraisal provision – there must first be a dispute over the amount of the loss. This Court's prior order on appraisal erred by ignoring the Policy's condition precedent language, instead holding GEICO's paying Plaintiff over $45,000 for the loss meant that the poof of loss element of the Policy's appraisal provision must have been met, so there must have been a disagreement about the amount of loss. [Doc. 55 16-18]. But GEICO making a payment on the claim in no way establishes GEICO "and the insured do not agree on the amount of loss." Ex. B to Decl. of Barry I. Levy at 12 [Doc. 34-2] (emphases omitted). The Second Circuit highlighted the problem such a conclusion creates: "then insurance companies are not going to send what they believe they owe promptly to people who need to replace their cars, they're gonna wait and litigate it, and . . . that doesn't make any sense at all." *Milligan I*, Rec. of Oral Arg. At 19:03-19:25. Instead, an insurer may make a payment on a claim, and the parties may continue to engage in negotiations over the amount of loss, prior to there being a dispute over the amount of loss sufficient to trigger the appraisal provision. If mere negotiations over the "amount of loss" triggers the condition precedent, GEICO or the insured would be compelled to demand appraisal any time they negotiated over anything relating to the "amount of loss." This is not New York law. *See Amerex Grp., Inc. v. Lexington Ins. Co.*, 678 F.3d 193, 201 (2d

Cir. 2012) (noting importance of negotiation as precondition to appraisal in New York law).

A117-118. Plaintiff also expressly addressed this issue, arguing "[t]he District Court ruled on this point previously, and the 2ⁿᵈ Circuit upheld the decision on May 8, 2019. The 2ⁿᵈ Circuit clearly laid out in their May 8, 2019, judgment that 'appraisal is not appropriate in this case.'" A120.

In denying GEICO's Letter Motion, the District Court summarized *Milligan II*'s holdings and simply concluded, "[a]s such, defendants request for a leave to file a motion on the issue is denied, and the request for a stay is denied as unnecessary." A154:8-10. The District Court did ***not*** deny GEICO's Letter Motion based on any finding that GEICO's appraisal demand was untimely, despite both GEICO's Letter Motion and Plaintiff's Response directly arguing the issue. Rather, its only reference to the remedy sought in GEICO's Letter Motion, and to its prior determination regarding appraisal, was to state that *Milligan II* "did not endorse appraisal of the total loss vehicle as defendants mistakenly assert. In fact, that argument was rejected in the first decision to compel appraisal that was denied by [the District Court] and affirmed by the Second Circuit back in 2019." A153. As explained *supra* pp.15-16, this is *not* what *Milligan II* held. *Milligan II* specifically instructed that insurers can "extrapolate a reasonable purchase price [of the loss vehicle] from the sale price of nearly identical cars with the aid of a professional appraiser," which is an appraisal of the loss vehicle in order to determine the reasonable purchase price of a new

identical vehicle.  2022 WL 433289, at *4.  By adhering to *that* portion of its prior decision when denying GEICO's Letter Motion, but *not* denying GEICO's Letter Motion based on untimeliness grounds, the District Court implicitly rejected its prior untimeliness determination.

In short, for multiple reasons, the District Court's untimeliness determination has already been rejected.

### ii. <u>To The Extent The Untimeliness Determination Has Not Already Been Rejected, It Should Be Reversed As Part Of This Appeal</u>

To the extent the untimeliness determination somehow remains, this Court can and should reverse the District Court's erroneous untimeliness determination as part of this appeal.

Even if *Milligan I* did not reject the District Court's untimeliness determination, it unequivocally did not affirm it.  Therefore, *Milligan I* did not preclude the District Court from revisiting its untimeliness determination on remand.  Rather, the District Court's untimeliness determination "technically remained law of the case" in the District Court, and the District Court retained discretion to reconsider it.  *In re PCH Assocs.*, 949 F.2d 585, 593 (2d Cir. 1991); *cf. generally American Hotel Intern Group Inc. v. OneBeacon Ins. Co.*, 611 F. Supp. 2d 373, 379 (S.D.N.Y. 2009) ("[W]hen an appellate court does not address an issue that a trial court decided, the trial court on remand has the discretion to determine whether its prior determination on an issue should be disturbed.");  *Milligan II*, 2022 WL

38

433289, at \*6 ("[T]he [law of the case] doctrine does not rigidly bind a court to its former decisions, but is only addressed to its good sense." (Quotations omitted) (discussing this doctrine in the context of Plaintiff's arguments)).

GEICO was therefore well within its rights to request that the District Court reconsider its erroneous untimeliness determination, and it promptly did so as soon as cogent and compelling reasons existed to do so. A116-118. GEICO's March 2016 appraisal demand had been pending and was never withdrawn. Promptly after the issuance of *Milligan II*, GEICO nevertheless renewed its demand for appraisal, and upon Plaintiff's refusal, GEICO sought to compel enforcement of the Appraisal Provision, requesting, *inter alia*, that the District Court vacate its prior untimeliness determination (or otherwise acknowledge the untimeliness determination had implicitly been rejected). A116-118. Additionally, GEICO argued, at length, the reasons the District Court should reconsider and overrule its erroneous untimeliness determination. *See supra*.

The timeliness of GEICO's demand for appraisal, which GEICO raised and argued in its *Milligan I* appeal and in the District Court at every possible juncture of the case in which it was appropriate to do so, is properly before this Court.[8] *Cf. generally PCH*, 949 F.2d at 597.

_____

[8]Alternatively, if this Court concludes the District Court failed to adequately consider or rule on GEICO's argument to reconsider the District Court's prior erroneous untimeliness determination (and GEICO's other arguments supporting its

39

The District Court's erroneous untimeliness determination should be reversed, to the extent it remains. In concluding GEICO's demand was untimely, the District Court misread the Policy and its conclusion was unsupported and contrary to precedent.

The Appraisal Provision provides: "<u>If we and the **_insured_** do not agree on the amount of _loss_</u>, either may, within 60 days after proof of _loss_ is filed, demand an appraisal of the _loss_." A34 (underlining added, other emphases in original). The District Court's failure to focus on the primary condition precedent for triggering the appraisal condition—that there is a dispute over the amount of loss—was an error as a matter of law. The Magistrate Judge, and subsequently the District Court, erred by ignoring the condition precedent language entirely. _Milligan R&R_, 2017 WL 9939046, at *9-10; _Milligan 2018 District Court Ruling_, 2018 WL 3632690.

The District Court's[9] conclusion that, "however one might define a proof of loss under this particular policy, plaintiff must have complied with this policy

---

right to compel appraisal) because it denied GEICO's Letter Motion requesting leave to file a motion to compel appraisal, GEICO respectfully requests that this Court remand this case to the District Court to require the District Court to permit GEICO to file its motion to compel appraisal. _See supra_ n.3.

[9]Because the District Court adopted the Magistrate's determinations in the applicable portion of the R&R without further analysis or consideration of GEICO's objections to the R&R, this brief refers to the District Court rather than the Magistrate Judge when discussing the R&R.

requirement because GEICO paid more than $45,000 as a result of the information provided by plaintiff," *Milligan R&R*, 2017 WL 9939046, at *10, demonstrates it ignored the condition precedent in the appraisal provision.  That GEICO made a payment on the claim in no way establishes that GEICO "and the insured do not agree on the amount of loss"—which *must* be the case before the appraisal provision can be triggered.  A34 (emphases omitted).  During oral argument before this Court in *Milligan I*, the panel highlighted the problem such a conclusion creates: "then insurance companies are not going to send what they believe they owe promptly to people who need to replace their cars, they're gonna wait and litigate it, and . . . that doesn't make any sense at all."  A118 (quoting Recording of Oral Arg. at 19:03-19:25, *Milligan I* (Mar. 8, 2019) (No. 18-1407-cv)).  Instead, an insurer is permitted to make a payment on a claim, and the parties may continue to engage in negotiations over the amount of loss, prior to there being a dispute over the amount of loss sufficient to trigger the appraisal provision.  Here, after being told the amount of the loss, Plaintiff did not dispute the amount of loss or provide an alternative amount of loss and hired an attorney instead in order to file this putative class action.

Any other conclusion renders negotiations a nullity.  If mere negotiations over the "amount of loss" triggers the condition precedent, GEICO or ***the insured*** would be compelled to demand appraisal any time they negotiated over anything relating to the "amount of loss."  In New York, parties should negotiate before a dispute over

41

the "amount of loss" has ripened, and should only seek appraisal once the dispute has ripened. *Amerex*, 678 F.3d at 201 (noting the importance of negotiation as a precondition to appraisal under New York law).

Even assuming mere negotiations mean that a dispute over the "amount of loss" has ripened, the District Court still erred. Pursuant to the Policy's appraisal provision, the insured must file a "proof of loss" to start the clock on the 60-day time period during which either party may demand appraisal. A34. But Plaintiff did not file a proof of loss reflecting a higher amount of loss before filing her complaint. The District Court acknowledged as much: "Notwithstanding the vast amount of factual material submitted, as well as the opportunity provided by the Court for the parties to supplement the record, <u>no one has submitted evidence concerning the filing of a formal proof of loss</u>." *Milligan R&R*, 2017 WL 9939046, at *9 (emphasis added).

The District Court nevertheless found GEICO's demand was untimely, but *did not determine what event constituted the filing of a proof of loss sufficient to trigger the 60-day time period* during which either party could have demanded appraisal. *See id.* at *9-10 (stating, "<u>however one might define a proof of loss</u> under this particular policy, plaintiff must have complied with this policy requirement because GEICO paid more than $45,000 as a result of the information provided by plaintiff," and "<u>whatever a proof of loss may be</u>, it is not the complaint in this action"

42

(emphases added)). Neither policy language nor precedent support the conclusion that because GEICO made a payment on the claim, a proof of loss must have been filed. Nor is there support for the proposition that GEICO's 60-day time period to demand appraisal began to run at some <u>unidentified</u> point in time. Such an interpretation of the Policy's appraisal provision would place insurers like GEICO in the untenable position of never knowing when they may demand appraisal, and when their right to demand appraisal expires.

"[U]nder New York law, waiver of the right to an appraisal is not lightly inferred." *SR Int'l Business Ins. Co. Ltd. v. World Trade Ctr. Props. LLC*, No. 01 Civ. 9291 JSM, 2003 WL 1344882, at *3 (S.D.N.Y. Mar. 18, 2003) (citations omitted). "Thus, in the context of a contractual time limit for the assertion of a right to an appraisal," like exists in the Policy here, New York courts "require strict compliance with the requirement of a proof of loss statement rather than [] substantial compliance." *Id.* Here, the District Court acknowledged Plaintiff did not strictly comply with the requirement to file a proof of loss, *Milligan R&R*, 2017 WL 9939046, at *9, and thus should not have concluded GEICO waived its appraisal rights by failing to demand appraisal within 60 days of some unspecified date.[10]

---

[10]The District Court opined its "construction [of the requirement] is consistent with New York law, which holds that '[a]s a general rule, notice and proof requirements are liberally construed in favor of the insured.'" *Milligan R&R*, 2017 WL 9939046, at *10 (quoting *SR Int'l Bus. Ins. Co. v. World Trade Ctr. Properties, LLC*, 381 F. Supp. 2d 250, 259 (S.D.N.Y. 2005)). But in so opining, the District Court

"The New York policy favoring appraisal proceedings suggest that a party seeking to initiate the time limit for seeking an appraisal should be required to give sufficiently clear notice that the document it is delivering to the insurer is the Proof of Loss that triggers the time limit for asserting appraisal rights." *SR*, 2003 WL 1344882, at *4. Plaintiff did not give any notice, let alone "sufficiently clear notice," that any specific document it delivered to GEICO prior to filing her complaint triggered the 60-day time period to demand appraisal. The District Court's conclusion was unsupported and contrary to precedent. Under New York policy regarding contractual time limits to assert appraisal rights, without a proof of loss GEICO's time to demand appraisal did not begin to run.[11]

The District Court's conclusion that "[e]ven assuming . . . that the policy at issue lacked a definite timeframe, GEICO's demand for appraisal would still be

---

erroneously disregarded that "**in the context of a contractual time limit for the assertion of a right to an appraisal**," like exists in the Policy here, New York courts "require strict compliance with the requirement of a proof of loss statement rather than [] substantial compliance." *SR*, 2003 WL 1344882, at *4 (emphasis added).

[11]Even if Plaintiff had filed a proof of loss—which she did not—the parties did not disagree on the "**amount** of *loss*," A34 (bold emphasis added), until after *Milligan II*. Before that, *Milligan I* held the parties disagreed on how to *define* the amount of loss. This Court observed in *Milligan I*, "Milligan is not claiming simply that the value of her loss was greater than GEICO's calculation. Rather, her complaint is that by calculating her loss using the average of three comparable vehicles available in the market (the methodology used in the Market Valuation Report), GEICO failed to comply with Regulation 64, which is incorporated into the Policy." 920 F.3d at 153.

rejected as untimely under the facts of this case" is similarly erroneous. *Milligan R&R*, 2017 WL 9939046, at *9-10.

New York courts consider three non-dispositive factors in determining whether a party demanded appraisal within a reasonable period: "(1) whether the appraisal sought is 'impractical or impossible' (that is, whether granting an insurer's appraisal demand would result in prejudice to the insured party); (2) whether the parties engaged in good-faith negotiations over valuation of the loss prior to the appraisal demand; and (3) whether an appraisal is desirable or necessary under the circumstances." *Amerex*, 678 F.3d at 201 (quoting *SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props., LLC*, No. 01 Civ. 9291, 2004 WL 2979790, at *3 (S.D.N.Y. Dec. 1, 2004)).

The District Court previously concluded these factors counseled rejection of the appraisal demand, because the fact that the parties no longer possessed the remnants of the totaled vehicle "render[ed] appraisal effectively 'impractical or impossible,' and something less than 'desirable or necessary.'" *Milligan R&R*, 2017 WL 9939046, at *10. While not clear, the District Court appeared to perpetuate these findings at the October 12, 2022, hearing, opining *Milligan II* "did not endorse appraisal of the total loss vehicle, as defendants mistakenly assert. In fact, that argument was rejected in the first decision to compel appraisal that was denied by this Court and affirmed by the Second Circuit back in 2019." A153.

45

The District Court's initial ruling and its October 12, 2022, ruling on this issue are both erroneous, as *Milligan II* and the District Court's own endorsement of the use of appraisal at the October 12, 2022, hearing demonstrate. GEICO's duty is to pay for the "loss," and the Policy limits GEICO's liability to the "actual cash value" of the loss vehicle, as defined by *Milligan II's* interpretation of the "reasonable purchase price . . . of a new identical vehicle," as that phrase is used in Regulation 64—"the price that a reasonable buyer would pay to purchase an identical, brand new, factory-fresh car from the local dealership in the normal course of business" on the date of loss in the relevant geographic area, less any applicable deductible and depreciation. *Milligan II*, 2022 WL 433289, at *4; A33.

Without conceding that there is merit to the absence of vehicle argument, GEICO is not required to pay the value of the *actual* loss vehicle as it existed at the time of loss, and thus possession of the loss vehicle is irrelevant.[12]   The appraiser will need to price "an identical, brand new, factory-fresh car" on the date of the loss.[13]   There is no reason for the appraiser to need to inspect or evaluate the loss

---

[12]Even before *Milligan II*, GEICO made this argument in its briefing in *Milligan I*. August 20, 2018, Opening Brief for Defendant-Appellant GEICO in Case No. 18-1405, Document 51, at 24-25.

[13]As this Court opined, "the price of such a new car might well be different from what the same car cost at the time the lost vehicle was originally purchased, depending on the proximity to the release of a new model or other vagaries of the marketplace.  Accordingly, specifying that the price is on the date of loss makes a

vehicle. All information necessary to appraise a "new identical vehicle" is already available to the appraiser: Plaintiff's vehicle make, model, year, and any applicable options are listed in the CCC Report.

Compelling appraisal would not prejudice Plaintiff in any way as it would, in all likelihood, resolve her claims in an expedited and cost-effective manner. *See* ECF 51. An appraisal is neither "impractical nor impossible," and the District Court's misunderstanding of what must be appraised is erroneous. An appraisal will determine the amount of the loss, if any, in compliance with New York law.

Similarly, the District Court's previous determination that an appraisal is "something less than 'desirable or necessary'" is immaterial, particularly after *Milligan II*. *Milligan R&R*, 2017 WL 9939046, at *10. As a preliminary point, the parties knew that the absence of the vehicle was a real possibility but still agreed to the extrajudicial remedy of appraisal. An appraisal of an absent vehicle is not impossible. *Milligan II* also specifically instructed the parties that appraisal is an appropriate way to determine "the reasonable purchase price . . . of a new identical vehicle" where, as here, there are no "identical" vehicles available for comparison. 2022 WL 433289, at *4. And *directly contrary* to its 2018 conclusion, the District Court repeatedly endorsed the use of appraisal at the October 12, 2022, hearing,

---

meaningful difference in determining how much compensation is owed to the insured." *Milligan II*, 2022 WL 433289, at *4 n.4.

making clear that appraisal is desirable at this juncture of the case. *See* A159:10-13; A158:17-21; A158:1-6; A155:15-19 ("The Circuit said you can use an appraiser . . . to help you, number one, find what the price was for a brand-new 2015 Lexus that had whatever features matched the total loss vehicle"); A155:24-A156:2; A157:11-14 ("[T]he Circuit said that's fine, that you can use a professional appraiser to do that; right?  Because they will know . . . how do you find that information.").  In sum, to the extent the District Court's untimeliness determination was not already rejected, it is erroneous in all respects, and should be reversed.

## XI.    <u>CONCLUSION</u>

For the reasons set forth herein, GEICO respectfully requests that this Court reverse the District Court and remand the matter to the District Court to compel the parties to participate in, and be bound by, the extrajudicial appraisal remedy required in the Appraisal Provision.

DATE:  February 15, 2023

/s/ *Dan W. Goldfine*
**DICKINSON WRIGHT PLLC**
Dan W. Goldfine
Jamie L. Halavais
1850 N. Central Avenue
Suite 1400
Phoenix, AZ 85004
Tel:  (602) 285-5038
dgoldfine@dickinson-wright.com
jhalavais@dickinson-wright.com

**RIVKIN RADLER LLP**
Barry I. Levy

48

Michael P. Versichelli
Cheryl F. Korman
926 RXR Plaza
Uniondale, New York 11556-0926
Tel: (516) 357-3000
Barry.levy@rivkin.con
Michael.versichelli@rivkin.com
Cheryl.korman@rivkin.com

*Attorneys for Defendant-Appellant*
*GEICO General Insurance Company*

## XII.   <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Fed. R. App. P. 32(g)(1), I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B). This brief contains 12,076 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), as calculated by Microsoft Word 2016, the word processing program used in its preparation.

I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14 Point Times New Roman font.

DATE:  February 15, 2023

/s/ *Dan W. Goldfine*
Dan W. Goldfine

## XIII. <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 15th day of February, 2023, I electronically transmitted the attached foregoing document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to all counsel of record.

DATE:  February 15, 2023

<u>/s/ *Dan W. Goldfine*      </u>
Dan W. Goldfine